UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11877-GAO

CARMENELISA PEREZ-KUDZMA, VINCENTE PEREZ ACEVEDO, BIXCIA NORIEGA ACEVEDO, CARMEN GLORIA ACEVEDO PAGAN, and ZULEMA QUINONES TRABAL,
Plaintiffs,

v.

THE UNITED STATES OF AMERICA; DONALD J. TRUMP, in his official capacity as President of the United States; THE DEPARTMENT OF HOMELAND SECURITY; and ELAINE DUKE, in her official capacity as Acting Secretary,
Defendants.

OPINION AND ORDER
December 8, 2017

O'TOOLE, D.J.

The Merchant Marine Act of 1920, colloquially referred to as the "Jones Act," requires vessels transporting merchandise between United States ports to be wholly owned by United States citizens. 46 U.S.C. § 55102(b). This requirement is sometimes described as the Act's "cabotage" provision. The exclusion of foreign-owned vessels from participating in the transport of merchandise between U.S. ports, by reducing the number of vessels available for service, may have the effect of slowing the delivery of needed equipment and supplies to a destination port during a period of emergency, when a rapid relief response would be desirable.

Exceptions can be made, however. In particular, the head of an agency responsible for the administration of navigation laws may waive compliance with the Jones Act cabotage provision on recommendation by the Secretary of Defense that waiver is necessary in the interest of the national defense. Id. § 501(a). Acting pursuant to that provision, this past September the Acting Secretary of Homeland Security granted three temporary waivers of the Jones Act cabotage

provision in the wake of Hurricanes Harvey, Irma, and Maria, to permit relief supplies to flow more quickly to the affected areas. After Harvey, a waiver was granted for seven days to permit refined petroleum products to be shipped in non-U.S. vessels from New York, Pennsylvania, Texas, and Louisiana to South Carolina, Georgia, Florida, and Puerto Rico. After Irma, a similar seven day waiver was granted to permit refined petroleum products to be shipped in non-U.S. vessels from New York, New Jersey, Delaware, Maryland, Pennsylvania, New Mexico, Texas, Louisiana, Mississippi, Alabama, and Arkansas to Florida, Georgia, South Carolina, North Carolina, Virginia, West Virginia, and Puerto Rico. After Maria, a waiver was granted for ten days, for all products being shipped to Puerto Rico.

The waivers have all expired, and the Jones Act cabotage restriction is back in full force. The plaintiffs in this action assert, among other things, that their business and property interests in Puerto Rico have been and continue to be damaged as a result of the destruction caused by Hurricane Maria. They bring this action to compel the relevant authorities to grant an extended waiver of the Jones Act cabotage provision as applied to maritime transport to Puerto Rico, and they seek a preliminary injunction to that effect. They advance claims under the due process and equal protection clauses of the Fifth Amendment, the Ninth Amendment, and the so-called "public trust" doctrine.

To succeed in obtaining a preliminary injunction, the plaintiffs must establish that the four necessary factors weigh in their favor: (1) that they have a likelihood of success on the merits of their claims; (2) that there is a likelihood that they will suffer irreparable harm if the injunction is denied; (3) that the balance of harms tilts in their favor; and (4) that a ruling in their favor is in the general public interest. Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted). "The sine qua non of this four-part inquiry is likelihood of success on the

merits." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (citation omitted). "'[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (citation omitted).

The plaintiffs first assert that the defendants violated their substantive due process rights under the Fifth Amendment by only belatedly waiving the Jones Act as to Puerto Rico and by subsequently declining to extend or renew the waiver. (Their argument in this respect is addressed only to the third waiver, the one that applied solely to Puerto Rico.) To prevail on a claim that executive action has denied a plaintiff substantive due process, the plaintiff must show that the behavior of the relevant officer(s) "'shock[s] the contemporary conscience.'" Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010).[1] This standard requires showing that adverse executive action was "'so severe … so disproportionate to the need presented, and … so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" Id. at 881 (quoting Moran v. Clarke, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (ellipses in original)). The factual basis for the plaintiffs' claim does not come close to satisfying that standard. At bottom what the plaintiffs claim violates their substantive due process rights is the defendants' decision not to suspend a provision of statutory law. It may well be that there is a plausible case for a further and extended waiver. But the decision to grant one is committed to executive judgment. The plaintiffs point to no executive misconduct other than the failure to agree with them that a waiver should issue.

---

[1] The plaintiffs' initial complaint seemed to allege substantive due process violations stemming from executive and legislative action, see (Compl. ¶¶ 101–124 (dkt. no. 1)), but they have since clarified that they are challenging only the former, see (Pls.' Reply to Defs.' Opp'n to Pls.' Mot. TRO, 11 (dkt. no. 26)).

The plaintiffs next assert that they were denied equal protection because Puerto Rico received less favorable treatment regarding a Jones Act waiver in the wake of Maria than other States, such as Florida or Texas, received after Harvey and Irma. The equal protection component of the due process clause is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); see Aponte-Ramos v. Alvarez-Rubio, 783 F.3d 905, 908 (1st Cir. 2015).

Although the precise basis of plaintiffs' equal protection claim is murky, it is nonetheless clear that they have not shown a likelihood of success on the claim. Put simply, the plaintiffs have not shown that Puerto Rico was treated less favorably than other States as to waivers. First of all, Puerto Rico was included in all three waivers. The first two waivers that pertained to shipping destinations in certain States also applied to shipping to Puerto Rico. There was nothing unequal about that. Moreover, the third waiver issued for the benefit of Puerto Rico alone was a broader, blanket waiver covering all merchandise, while the previous waivers for the other hurricane-affected areas applied only to refined petroleum products. For these reasons, an argument could plausibly be made that Puerto Rico did *better* than others in receiving the benefit of waivers. The plaintiffs point to what they regard as an unnecessary delay in granting the third waiver as distinguished from the rapidity with which the first waivers were granted as evidence of unequal treatment. Again, Puerto Rico was as much a beneficiary of the prompt grant of the first two waivers as the States named in those waivers, but even putting that aside, it is a stretch to regard an agency's slowness in taking a favorable discretionary action as sufficient by itself to make out a claim of equal protection. Other than that delay, no other different or unequal treatment has been shown.

Finally, neither the Ninth Amendment nor the "public trust" doctrine is capable of providing the plaintiffs a basis for their requested relief. The Ninth Amendment does not create enforceable substantive rights, Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 9 (1st Cir. 2007), and the "public trust" doctrine concerns whether a State or a private person may claim ownership of tidal lands and whether a State may alienate those lands, see Phillips Petrol. v. Mississippi, 484 U.S. 469, 473-74 (1988); Alec L. v. Jackson, 863 F. Supp. 2d 11, 13 (D.D.C. 2012), and it is plainly inapplicable in the present case.

In sum, the plaintiffs have not established a likelihood of success on the merits of any of their claims. Consequently, the remaining preliminary injunction factors need not be addressed. The plaintiffs' motion for a preliminary injunction is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge